UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES GRACE,

                Plaintiff,

v.
                                        **DECISION AND ORDER**
                                        **17-CV-1162**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

## INTRODUCTION

Plaintiff James Grace brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c). Dkt. Nos. 6, 11. For the reasons that follow, the Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

## BACKGROUND

On December 3, 2013, the plaintiff protectively filed applications for SSI and DIB with the Social Security Administration ("SSA") alleging disability since September 16, 2010, due to anger displacement, anxiety/social anxiety, attention deficit

1

hyperactivity disorder (ADHD), and partial brain damage. Tr.[1] 180,187, 203. On March 2, 2014, the plaintiff's claim was denied by the SSA at the initial level. Tr. 99-100. On April 7, 2016, the plaintiff, represented by counsel, appeared and testified along with a vocational expert ("VE") before Administrative Law Judge, Brian LeCours ("the ALJ"). Tr. 34-70. On May 11, 2016, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 17-33. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on September 14, 2017. Tr. 1-5. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

---

[1] References to "Tr." are to the administrative record in this matter.

marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.      Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. At step one, the ALJ found the plaintiff had not engaged in substantial gainful activity since February 22, 2012, the alleged onset date. Tr. 22. At step two, the ALJ found the plaintiff has the following severe impairments: anxiety disorder, affective disorder, personality disorder, obesity, and chronic obstructive pulmonary disease ("COPD"). *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 23.

Next, the ALJ determined that the plaintiff retained the RFC to "perform light work[2] except that he: must avoid concentrated exposure to noise, defined as Noise Intensity Level 4 and above; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases; his work must consist of unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; there can be minimal interaction (defined as less than occasional temporally and for brief and superficial content) with the general public; and there can be occasional interaction with co-workers and supervisors." Tr. 24. At step four, the ALJ determined the plaintiff is unable to perform his past relevant work as a "Fast Food Worker (DOT 311.472-010), Cashier II (DOT 211.462-010), Cashier Checker (DOT 211.462-014) and Kitchen Worker (DOT 318.687-010).

At step five, the ALJ considered the plaintiff's age of 35 (a younger individual), high school education, ability to speak English, work experience, and RFC; and relied upon the VE's testimony to determine that the plaintiff could perform alternative substantial gainful work. Tr. 27. The ALJ found the plaintiff could perform the requirements of representative light, unskilled occupations including, "Hand Packager (DOT 559.687-074)"; "Mail Clerk (DOT 209.687-026)"; Photocopy Machine Operator (DOT 207.685-014)"; and "Housekeeping Cleaner (DOT 323.687-014)."

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from February 12, 2012, through May 11, 2016, the date of the decision. Tr. 28.

II. **Analysis**

Plaintiff argues the ALJ erred by failing to fully develop the record by determining the plaintiff's RFC without a medical opinion; failed to request cognitive testing for the plaintiff; failed to consider treatment records from Psychiatric Nurse Practitioner, Jerry Frisicaro ("PNP Frisicaro"); and improperly ignored certain portions of the Consultative Examiner's report despite according the opinion "great weight." Dkt. No. 6 at 11-23. The Commissioner contends the decision is supported by substantial evidence and should be affirmed. Dkt. No. 11 at 15. For the reasons set forth below, this Court finds that the ALJ erred in failing to obtain any opinion evidence assessing the plaintiff's physical capabilities, and therefore determined the plaintiff's RFC based on his own interpretation of the medical record, warranting remand for further proceedings.[3]

**1. The RFC is Unsupported by Substantial Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his

---

[3] In light of the conclusion reached below, the Court need not address the plaintiff's remaining arguments as, upon remand, the ALJ must solicit opinions about the plaintiff's functional abilities and then consider that information in formulating the plaintiff's RFC.

6

decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F.Supp.3d, 586 (W.D.N.Y. 2018) (quotation omitted). Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate theses diagnoses to specific residual functional capacities such as those set out in 20 C.F.R. § 404.1567(a) … [the Commissioner may not] make the connection himself." *Dennis v. Colvin*, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). Where the ALJ makes an RFC determination without a medical opinion evaluating the claimant's functional capabilities, the RFC is not supported by substantial evidence. *Lawton v. Comm. of Social Security*, 351 F. Supp.3d 378, 383 (W.D.N.Y. 2019) (citation omitted) (finding the ALJ's assessment of RFC limitations relating to claimant's prostatitis was based on her own lay interpretation of medical records and therefore, not supported by substantial evidence).

In this case, there was no medical opinion evidence for the ALJ to consider in formulating the plaintiff's physical RFC as the medical opinion evidence in the record evaluated only the plaintiff's psychiatric symptoms. Although there are medical treatment notes in the record regarding the plaintiff's physical impairments, they do not address how the impairments affect his physical ability to perform work-related functions. Despite the lack of medical opinion evidence, the ALJ found the plaintiff's obesity and COPD to be severe physical impairments and found the plaintiff's hearing loss, carpal tunnel syndrome, heart disease, and GERD were non-severe impairments. Tr. 23.

In consideration of the plaintiff's COPD, the ALJ included the following RFC limitation: "must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases."  Tr. 24.  The ALJ acknowledged the plaintiff's testimony that he experienced shortness of breath due to respiratory irritants and exertion, and that he experiences shortness of breath on a daily basis, preventing him from walking more than one block at a time.  Tr. 25.   In support of his decision, the ALJ noted the plaintiff's respiratory exams were "routinely normal" in that: the plaintiff received asthma treatment intermittently and conservatively; that there was no diagnostic evidence of acute respiratory complications; and that the plaintiff continued to regularly smoke cigarettes despite his symptoms.  *Id.*  In regards to the plaintiff's obesity, the ALJ referenced the plaintiff's treatment provider notes finding "unremarkable gait" and observing that he did not use assistive walking devices.  *Id.*  The ALJ also noted that although the plaintiff's body mass index ("BMI") levels were elevated, they have not resulted in any long-term cardiovascular or musculoskeletal complications.  *Id.*

The ALJ determined that the plaintiff was capable of performing light work which involves frequent lifting, bending, walking, standing, carrying, etc., without a medical opinion or analysis of the plaintiff's ability to stand, walk, sit, push, pull, lift, and carry.  "It is unclear to this Court how the ALJ arrived at the RFC and thus it is not supported by substantial evidence."  *Zayas v. Colvin*, 2016 WL 1761959 at *4 (W.D.N.Y. 2016) (collecting cases).  The ALJ did not cite to any opinion evidence from an acceptable medical source, and there is no such evidence in the record.  Therefore, the

ALJ necessarily determined the plaintiff's RFC based on his interpretation of the medical record.

The Commissioner cites [*Tankisi v. Comm'r Soc. Sec.*, 521 F.App'x. 29, 33-34 (2d Cir. 2013) (summary order)], in support of her argument that the ALJ was not required to obtain a medical source statement because the record contains sufficient evidence from which the ALJ could assess a claimant's RFC. *Id.* (holding, an ALJ was not required to seek a medical source statement or formal medical opinion in determining the claimant's RFC where the medical record was voluminous and included an assessment of the claimant's limitations from a physician). The Second Circuit Court of Appeals approach articulated in *Tankisi* focuses on circumstances of the particular case including the comprehensiveness of the administrative record. *Id.* However, the Commissioner's reliance on *Tankisi* is misplaced. In this case, unlike in *Tankisi*, the plaintiff's medical record is minimal and does not include *any* assessment of the plaintiff's physical limitations. *Tankisi*, 521 F. App'x at 33-34. "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient *only* when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Muhammad v. Colvin*, 2017 WL 4837583, *4 (W.D.N.Y. 2017) (internal quotations omitted) (emphasis added). Where, as here, the record is devoid of a useful assessment of the plaintiff's limitations, remand is warranted. See e.g. *Schwartz v. Comm'r of Soc. Sec.*, 2019 WL 1969793 (W.D.N.Y. 2019); *Bernman v. Comm'r of Soc.*

*Sec.*, 350 F.Supp.3d 252, 260 (W.D.N.Y. 2018); *Wallace v. Berryhill*, 2018 WL 4253174 (D. Conn. Sept. 6, 2018).

The ALJ has a duty to "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.,* 651 F.3d 299, 305 (2d Cir. 2011) (internal quotation marks and citations omitted). Naturally, counsel has a responsibility to bring all favorable evidence to the ALJ's attention. *Id.* However, counsel's responsibilities do not detract from the ALJ's responsibility to investigate. *See Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996). Accordingly, I conclude that remand is appropriate to allow the ALJ to obtain a physical RFC assessment or medical source statement from an acceptable medical source concerning the plaintiff's physical capabilities, in light of his impairments.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings (Dkt. No. 11) is DENIED, and Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is GRANTED to the extent that the matter is remanded for further administrative proceedings.

DATED: Buffalo, New York
May 9, 2019

<u>*s/ H. Kenneth Schroeder, Jr.*</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**